1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Kevin Rochon Blaise,                    No. CV-13-01483-PHX-NVW (BSB)

10                    Petitioner,            **REPORT AND**
                                             **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                    Respondents.

14

15          Kevin Rochon Blaise (Petitioner) filed a Petition for Writ of Habeas Corpus

16   pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Respondents filed an Answer asserting that

17   Petitioner's claims are either procedurally barred or lack merit. (Doc. 10.)  Petitioner filed

18   a reply.[1]  (Doc. 14.)  For the reasons below, the Petition should be denied.[2]

19   **I.     Procedural Background**

20          **A.     Charges, Trial, and Sentencing**

21          On February 8, 2007, the Maricopa County Grand Jury indicted Petitioner for one

22   count of first-degree murder, a class one dangerous felony (Count 1), four counts of

23   aggravated assault, each a class three dangerous felony (Counts Two-Five), and one

24   _____

25          [1]  In his Reply, Petitioner "ask[s] the court to appoint him counsel" (Doc. 14 at 3),
     but he did not file a separate motion for the appointment of counsel.  Petitioner's request
26   for the appointment of counsel should be denied because he does not have a
     constitutional right to counsel in this section 2254 case and he has not meet the standards
27   for appointing counsel in this matter.  *See* 18 U.S.C. § 3006A(a)(2)(B).

28          [2]  This matter was transferred to the assigned magistrate judge on June 30, 2014.
     (Doc. 15.)

count of misconduct involving weapons, a class four felony (Count Six).[3]  (Doc. 10, Ex. D.)

   After a trial, the jury found Petitioner guilty as charged.  (Doc. 10, Ex. P; Ex. HHH at 105-09.)  Petitioner then stipulated "to the one aggravating circumstance of physical, emotional, and financial harm to the victim and/or victim's family" for each count of aggravated assault, and the trial court found that Petitioner "knowingly, intelligently and voluntarily waived his right" to a jury determination of these aggravating circumstances.  (Doc. 10, Ex. Q at 2; Ex. III at 10-19.)  The trial court also found that Petitioner was on parole at the time of the offenses, and that he had five prior felony convictions.  (Doc. 10, Ex. R at 2; Ex. JJJ at 14-17.)

   On August 8, 2008, the trial court sentenced Petitioner to life imprisonment with the possibility of parole after serving twenty-five years for Count One, presumptive 11.25-year prison sentences for Counts Two through Five, and a presumptive ten-year prison sentence for Count Six.  (Doc. 10, Ex. R, at 4–5; Ex. JJJ at 39-40.)  The trial court ordered the sentences on Counts One through Five to run consecutively to each other, and the sentence for Count Six to run concurrently with the sentence for Count Five.  (Doc. 10, Ex. R at 4-5; Ex. JJJ at 40.)

## B.   Summary of the Facts

   The Arizona Court of Appeals summarized the facts underlying Petitioner's convictions and sentences as follows.  (Doc. 10, Ex. A.)  Around midnight on March 5, 2006, five women, D.H., Ty.R., Ta.R., M.R., and L.H., went out for the evening.[4]

---

[3]  Petitioner was indicted in 2006 for one count of second-degree murder, four counts of aggravated assault, and one count of misconduct involving weapons.  (Doc. 10, Ex. A.)  After receiving additional evidence, the State returned to the grand jury on January 30, 2007 and indicted Petitioner for one count of first-degree murder, four counts of aggravated assault, and one count of misconduct involving weapons.  (Doc. 10, Exs. C, G.)  The State later realized that two counts of aggravated assault had been charged under the wrong subsection of the statute and, on February 8, 2007, indicted Petitioner for the charges on which he was later convicted.  (Doc. 10, Exs. D, G.)  The trial court subsequently dismissed the first two cases without prejudice.  (Doc. 10, Exs. F, G, H.)

[4]  The Court refers to the five women by the initials that the appellate court used in its decision.  (Doc. 10, Ex. AA at 2.)

(Doc. 10, Ex. AA at 2.)  They ended up at Amvets nightclub, which was fairly crowded. (*Id.*)  D.H. saw Petitioner inside, near the back of the club.  (*Id.* at 3.)  The club closed soon after the women arrived because a fight broke out.  (*Id.*)  People exited the club, crowding the parking lot, and making it hard for cars to leave.  (*Id.*)  The five women eventually made their way to their car and prepared to leave.  (*Id.*)  Petitioner and a woman, L.P., were standing next to a car that was parked ten to fifteen feet from the women.  (*Id.*)  L.P. pointed at their car and told Petitioner, "[T]here they go, right there." She then walked to the other end of the parking lot.  (*Id.*)  The five women got into their car and started to leave.  (*Id.*)  A man later identified as S.R. was standing next to Petitioner and drew a gun.  (*Id.*)  One of the women, L.H. shouted: "Let's go. [S.R.] has a gun."  (*Id.*)  "S.R. fired several shots into the air."  (*Id.*)  Petitioner also had a gun.  He crouched down and shot several times into the car in which the women were riding.  (*Id.*) "L.H. suffered a gunshot wound to her head above her right eye, and she was also shot in the back and foot."  (*Id.*)  D.H. and M.R. were both shot in the foot.  (*Id.*)  "Ty.R. drove the women to the hospital.  L.H. died from the gunshot wound to her head." [5]  (*Id.*)

## C. Direct Appeal

On August 15, 2008, Petitioner filed a timely notice of appeal in the Arizona Court of Appeals.  (Doc. 10, Ex S.)  Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating there was "no arguable question of law that is not frivolous" to raise on direct appeal, and requesting permission for Petitioner to file a supplemental brief.  (Doc. 10, Ex. W.)  With the appellate court's permission, Petitioner later filed an opening brief, raising the following issues: (1) insufficient evidence supported the convictions; (2) his "Fourth and Sixth Amendment rights [were] violated when [he] was denied critical evidence," specifically the "medical records of two

---

[5]  The appellate court's factual determinations are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal court, the factual findings of state courts are presumed to be correct."); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

victims," and the denial of this evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963); (3) appellate counsel was ineffective; (4) he was "indicted three times on charges arising out of the same events" and requested that the appellate court "look into this just to see if those three indictments [were] in the guidelines of the law"; (5) the prosecutor committed misconduct; (6) the prosecutor knowingly presented false testimony at trial; (7) the trial court was "vindictive" and "pro-state"; (8) a juror broke the admonition by speaking to the prosecutor; (9) the jury was "unduly biased or improperly influenced" in violation of the Sixth Amendment when "several of the victims family and friends started crying and yelling" during a State witness's testimony; (10) the trial judge improperly granted immunity to all of the State's witnesses; (11) the trial court should have imposed concurrent sentences because the mitigating circumstances outweighed the aggravating circumstances; (12) "[t]he jury alternates were selected in an unlawful manner''; and (13) the trial court erred by failing to strike the entire jury panel.  (Doc. 10, Ex. Y.)

In a memorandum decision, the appellate court affirmed Petitioner's convictions and sentences.  (Doc. 10, Ex. AA.)  The appellate court issued an order and mandate on February 22, 2010.  (Doc. 10, Ex. BB.)  Petitioner filed a motion for extension of time to file a petition for review.  The appellate court granted the motion and vacated the order and mandate.  (Doc. 10, Exs. CC, DD.)  Petitioner later filed a petition for review in the Arizona Supreme Court (Doc. 10, Ex. EE), which was summarily denied on July 7, 2010. (Doc. 10, Ex. GG.)

### D.    Post-Conviction Proceeding

On March 22, 2010, Petitioner filed a notice of post-conviction review pursuant to Arizona Rule of Criminal Procedure 32.[6]  (Doc. 10, Exs. II & JJ.)   The trial court appointed counsel.  (Doc. 10, Ex. KK.)   Because Petitioner's direct appeal was still pending, the trial court dismissed the post-conviction proceeding, with leave to re-file after the issuance of the order and mandate on direct appeal.  (Doc. 10, Ex. LL.)

---

[6]  Petitioner filed two notices of post-conviction review, one pro se and one through counsel.  (Doc. 10, Exs. II, JJ.)

1   The Arizona Court of Appeals issued an order and mandate for the direct appeal
2   on August 25, 2010, and Petitioner filed a notice of post-conviction relief in the trial
3   court on September 16, 2010.  (Doc. 10, Exs. HH, MM.)   The trial court appointed
4   counsel who later filed a notice stating that she was "unable to find a tenable issue to
5   submit to the court pursuant to Rule 32, Arizona Rules of Criminal Procedure," and
6   asking for an extension of time for Petitioner to file a pro se petition.  (Doc. 10, Exs. NN-
7   QQ.)

8   With the court's permission (Doc. 10, Ex. SS), Petitioner filed a petition raising
9   the following issues: (1) Petitioner was improperly indicted three times for the same
10  charges arising from the same events; (2) the State violated his speedy trial rights by
11  indicting him three times; (3) the trial court erred by not dismissing the entire jury panel
12  or several individual members of the jury panel; (4) trial counsel provided ineffective
13  assistance by (a) failing to strike a particular juror from the original jury panel, (b) failing
14  to move for a mistrial when a juror talked to the prosecutor, (c) failing to move for a
15  mistrial when the victim's family cried during the testimony of a state's witness,
16  (d) failing to adequately explain "the *Blakely* rule" before Petitioner stipulated to an
17  aggravating circumstance, (e) failing to fully explain to the trial court why the defense
18  needed the victims' medical records, (f) failing to give discovery to Petitioner to facilitate
19  his participation in his defense, (g) failing to argue self-defense and failing to hire an
20  expert witness, (h) failing to inspect the victim's car, infringing on his speedy trial rights
21  by continuing the trial over Petitioner's objection, and failing to request evidentiary
22  hearings, (i) filing an untimely motion for a new trial, (j) failing to object to the
23  prosecutor's improper cross-examination of a defense witness, (k) failing to ask for a plea
24  bargain, (l) failing to file timely motions to suppress evidence, and (m) failing to object to
25  jury instructions; (5) the trial court erred in not enforcing the admonition and declaring a
26  mistrial when a juror talked to the prosecutor; (6) the trial court erred by extending the
27  last trial date in violation of Rule 8 of the Arizona Rules of Criminal Procedure; (7) the
28  trial court erred by not instructing the jury that the "state's victims/witnesses" had been

granted immunity; (8) the trial court improperly selected alternate jurors; (9) the trial court erred in calculating Petitioner's presentence incarceration credit; (10) the trial court erred by suppressing the "victims/witnesses medical records or toxicology reports"; (11) the trial court erred by admitting into evidence exhibit 80, a photograph of the crime scene; (12) the trial court erred by presenting a jury question to the investigating detective; (13) the trial court erred by not inquiring why Juror 14 was sick; (14) the trial court's bias effected the ruling on the Rule 20 motion; (15) the trial court erred by having extra security in the courtroom; (16) the trial court erred by imposing "unconstitutional multiple sentences for committing a single act"; (17) the prosecutor committed misconduct for various reasons; (18) the State used "false testimony" or failed to correct "perjured" testimony in violation of Petitioner's right to due process; (19) the trial court and the prosecutor suppressed two victims' medical records in violation of *Brady*; (20) the State violated the "Arizona Rules of Court" by showing a state witness transcripts and police reports before trial; (21) the prosecutor violated Petitioner's due process rights by reading his "entire criminal history" to the jury; (22) the prosecutor failed to produce three witnesses at trial; (23) there was insufficient evidence to support Petitioner's convictions; (24) appellate counsel was ineffective; (25) Petitioner was "convicted on the basis of an identification that was unconstitutionally suggestive"; (26) crime-scene evidence was not DNA tested and latent fingerprints were not tested; (27) the State destroyed potentially exculpatory evidence; and (28) Petitioner's convictions were based on perjured testimony.  (Doc. 10, Ex. TT.)

The trial court found that "most of the many claims raised by [Petitioner] in his PCR [were] precluded pursuant to Rules 32.2 and 32.6(c) as these claims were either litigated already or were waived either at trial or on appeal."  (Doc. 10, Ex. WW at 1.) However, it found that Petitioner's claims of "ineffective assistance of counsel (both trial and appellate) and newly discovered evidence" were not precluded.  (*Id.* at 2.)  The court concluded that Petitioner failed to establish that his counsel's representation fell below the prevailing objective standard or that there was "a reasonable probability that but for

counsel's errors, the outcome of the proceedings would have been different." (*Id.*)  The court also found that many of trial counsel's challenged actions were "clearly strategy decisions that cannot form the basis of an ineffective assistance of counsel claim," and noted that Petitioner described trial counsel's decisions as a "failed strategy." (*Id.* (emphasis omitted).)  The court further found that Petitioner "failed to establish the requirements necessary to demonstrate newly discovered evidence" as required by Rule 32.5.  (*Id.*)

On September 16, 2011, Petitioner filed a *pro se* petition for review in the Arizona Court of Appeals asserting that trial counsel was ineffective for: (1) failing to move for a mistrial after a juror spoke to the prosecutor; (2) failing to object or move for a mistrial when a juror and spectators started crying during a state witness's testimony; (3) denying Petitioner access to "the case documents, discovery, and police reports"; (4) not raising a self-defense theory; (5) letting "key evidence disappear without even inspecting it"; (6) not hiring a "key expert witness"; (7) failing to object to Petitioner being indicted three times; (8) failing to object to the jury panel;  (9) failing to object when the trial court changed the trial date; (10) failing to request a jury instruction on the "state's witnesses' immunity deal"; (11) miscalculating Petitioner's presentence incarceration credit; (12) failing to ask the trial court for MR's and DH's medical records; (13) failing to request TyR's and TaR's medical records; (14) failing to request that the trial court remove a sick juror from the jury; (15) failing to object when a "third party witness testified as if he was a first party witness"; (16) failing to object to the extra courtroom security; (17) failing to investigate the state's witnesses' criminal backgrounds; (18) failing to move to strike DH's testimony; (19) failing to call three key witnesses to testify at trial; (20) failing to have latent fingerprints tested and failing to have other crime scene evidence DNA tested; (21) failing to investigate what happened to a "second gun the witnesses/victims had with them" the night of the shooting; (22) failing to move for a mistrial "when the State fail[ed] to call witnesses that w[ere] the center piece of their [theory of] motive"; (23) failing to tell Petitioner that "the victim had a gun on her

lap after the event"; (24) asking the court for "countless continuances"; (25) failing to object during the State's cross-examination of a defense witness; (26) allowing the State to introduce irrelevant and misleading evidence; (27) filing an untimely Rule 24 motion; (28) failing to object to the "unconstitutional suggestive photo array/line ups"; (29) failing to object to the verdict forms; and (30) failing to object to the presence on the jury panel of jurors who knew each other.   (Doc. 10, Ex. XX; Doc. 10-3 at 44-46)[7]

Petitioner also asserted that appellate counsel was ineffective (*Id.* at 55-56); and that newly discovered evidence existed including "17 latent prints" that were taken from the victim's car, DNA evidence, gunpowder residue from the victim's car, a statement made by another man to one of the victims before the shooting, and evidence that the victims had two guns in the car.  (*Id.* at 59-60.)  On April 5, 2013, the appellate court denied review.  (Doc. 10, Ex. AAA.)  Petitioner did not file a petition for review with the Arizona Supreme Court. (Doc. 10, Ex. KKK.)

### E.   Federal Petition for Writ of Habeas Corpus

On July 16, 2013, Petitioner filed the pending Petition for Writ of Habeas Corpus, raising the following claims for relief:

*Ground One*: Trial counsel was ineffective for (a) denying Petitioner's "right to a fast and speedy trial by continuing [his] trial dates numerous times," (b) failing to conduct pretrial investigation and failing to obtain an expert witness for "crime scene reconstruction," (c) failing to give Petitioner "any police reports or discovery" until after trial, (d) failing to object or move for a mistrial when a juror spoke to a prosecutor, (e) failing to object or request a mistrial when "jury members and spectators started crying when state witness [M.R.] was on the stand testifying," (f) failing to raise the defense that someone else committed the crime, and (g) failing to object to the State indicting him "three times for the same act."  (Doc. 1 at 6-7.)

---

[7]   Because Exhibit XX includes three documents and the page numbers on that exhibit are obscured, the Court refers to Exhibit XX by the CM/ECF document and page numbers.  (Doc. 10-3 at 40-62.)

1    *Ground Two*: "The prosecutor knowingly used perjured testimony to obtain a

2    conviction" in violation of Petitioner's Fifth Amendment rights. (*Id.* at 8.)

3    *Ground Three*: Petitioner's convictions "resulted from state court errors which,

4    taken together denied Petitioner a fair trial" and violated the Fifth Amendment.

5    Petitioner specifically asserts that (a) the trial court erred by denying defense counsel

6    access to the "witnesses/victim's medical records," (b) the trial court erred by ordering

7    excessive courtroom security, (c) the trial court failed to instruct the jury that all of the

8    State's witnesses were granted immunity, (d) the trial court erred by allowing the State to

9    indict Petitioner three times and by not producing transcripts of the three grand jury

10   proceedings, and (e) the trial court erred by failing to remove a juror who was sick and

11   cried during a State witness's testimony. (*Id.* at 10.)

12   *Ground Four*: Petitioner's convictions were "obtained as the result of evidence

13   that is insufficient to persuade a properly instructed jury of his guilt beyond a reasonable

14   doubt [in] violation of the U.S. Constitution Fifth Amendment." (*Id.* at 11.)

15   *Ground Five:* Petitioner "was convicted on the basis of an identification that was

16   unconstitutionally suggestive [in] violation of the U.S. Constitution Fifth and Sixth

17   Amendment." (*Id.* at 16.)

18   *Ground Six*: The trial court imposed "unconstitutional multiple sentences for

19   committing a single criminal act [in] violation of the U.S. Constitution Eighth

20   Amendment." (*Id.* at 17.)

21   Respondents argue that Grounds One (a), (f), and (g), Grounds Three (b), (c), (d),

22   and (e), Ground Four, and Ground Five are procedurally barred from federal habeas

23   corpus review and that Grounds Three (d) and Four also lack merit. (Doc. 10 at 17.)

24   Respondents further argue that Petitioner's remaining claims lack merit. (Doc. 10 at 27.)

25   Petitioner argues that his claims are properly before the Court and that he is entitled to

26   habeas corpus relief. (Doc. 14.)

27   ///

28   ///

- 9 -

## II.     Exhaustion and Procedural Bar

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based.  *See Baldwin*, 541 U.S. at 33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at 31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims.  *See Coleman*, 501 at 731 32.  Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but

returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will

1  not review the merits of a procedurally defaulted claim unless a petitioner demonstrates

2  "cause" for the failure to properly exhaust the claim in state court and "prejudice" from

3  the alleged constitutional violation, or shows that a "fundamental miscarriage of justice"

4  would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750.

5  Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless

6  claims regardless of whether the claim was properly exhausted in state court. *See Rhines*

7  *v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court

8  to allow claims to be raised in state court if they are subject to dismissal under

9  § 2254(b)(2) as "plainly meritless").

10 **III.   Exhaustion and Procedural Bar Applied to Grounds One (a), (f), (g),**
**Three (b)-(e), Four, and Five**

11

12     **A.     Grounds One (a), (f), and (g)**

13         In Ground One, Petitioner raises seven claims of ineffective assistance of counsel.

14 (Doc. 1 at 6.)  *See Gulbrandson v. Ryan*, ___ F.3d ___, 2013 WL 5779188, at *12 (9th

15 Cir. Oct. 28, 2013) ("As a general matter, each 'unrelated alleged instance [] of counsel's

16 ineffectiveness' is a separate claim for purposes of exhaustion.") (quoting *Moormann v.*

17 *Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)).  Respondents argue that Grounds One (a),

18 (f), and (g) are barred from federal habeas corpus review.  (Doc. 10 at 18.)  As discussed

19 below, Petitioner properly exhausted Ground One (a) and it is properly before the Court

20 on habeas corpus review. However, Grounds One (f) and (g) are procedurally barred

21 from federal habeas corpus review.

22         **1.     Ground One (a) was Properly Exhausted**

23         In Ground One (a), Petitioner argues that trial counsel was ineffective in violation

24 of the Sixth Amendment because she requested numerous trial continuances in violation

25 of Petitioner's right to a speedy trial.  (Doc. 1 at 6.)  Petitioner presented this claim to the

26 trial court on post-conviction review.   (Doc. 10, Ex. TT.)   Respondents argue that

27 Petitioner did not properly exhaust this claim because he did not present it to the Arizona

28 Court of Appeals.  (Doc. 10 at 18-19); *See Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-

33 (D. Ariz. 2007) (stating that, in Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceeding.).

However, upon review of Petitioner's appellate brief for review of the trial court's denial of his petition for post-conviction relief, the Court finds that Petitioner did raise his claim that trial counsel was ineffective for requesting numerous continuances in violation of his right to a speedy trial.  (Doc. 10, Ex. XX; Doc. 10-3 at 46, 53)  Specifically, Petitioner alleged that trial counsel was ineffective for asking the court "for countless continuations" (Doc. 10-3 at 46), and argued that trial counsel continued his case "time after time" without asking him in violation of Petitioner's "fast and speedy rights."  (*Id.* at 53.)

Because Petitioner presented the claim of ineffective assistance of counsel raised in Ground One (a) to the trial and appellate courts on post-conviction review, he properly exhausted state remedies on that claim and it is properly before this Court on habeas corpus review.  *See Crowell*, 483 F. Supp. 2d at 931-33.  Accordingly, the Court addresses the merits of Ground One (a) in Section IV.

## 2.    Ground One (f) was not Properly Exhausted

In Ground One (f), Petitioner argues that trial counsel was ineffective for not presenting the defense that "somebody else committed the crime." (Doc. 1 at 6.) Petitioner did not exhaust this claim.  In his petition for post-conviction relief, Petitioner raised a similar claim, asserting that trial counsel was ineffective for not arguing self-defense at trial.  (Doc. 10, Ex. TT; Doc. 10-2 at 111 ("defense counsel did not want the burden of proving self-defense and relied on the insufficient evidence of the state case").)[8]  That similar, but different, claim was not sufficient to exhaust the specific claim of ineffective assistance that Petitioner asserts in Ground One (f).  *See Gulbrandson*,

---

[8]   Because the page numbers on Exhibit TT are obscured, the Court refers to Exhibit TT by the CM/ECF docket and page numbers.  (Doc. 10-2 at 86-187.)

2013 WL 5779188, at *12.  Accordingly, Petitioner did not properly exhaust Ground One (f).  *See Kelly v. Small*, 315 F.3d 1063, 1068 n.2 (9th Cir. 2003) (requiring exhaustion in state court of the factual basis of each distinct ineffective-assistance claim), *overruled on other grounds by Robbins v. Carey*, 481 F.3d 1143 (9th Cir. 2007).

### 3.        Ground One (g) was not Properly Exhausted

In Ground One (g), Petitioner claims that *trial counsel* was ineffective for failing to challenge the three indictments "for fundamental error."  (Doc. 1 at 7.)  In his petition for post-conviction relief, Petitioner argued that the State improperly indicted him three times for "charges arising out of the same events," and alleged that his *appellate counsel* was ineffective for failing to raise this issue on appeal.  (Doc. 10, Ex. TT; Doc. 10-2 at 91-32.)  Petitioner, however, did not argue in his petition for post-conviction relief, as he does now, that trial counsel was ineffective for failing to challenge the three indictments. (Doc. 10, Ex. TT; Doc. 10-2 at 109-115.)

Rather, Petitioner raised the claim he asserts in Ground One (g) for the first time in his petition for review to the court of appeals, which he filed challenging the trial court's denial of his petition for post-conviction relief.  (Doc. 10, Ex. XX; Doc. 10-3 at 44.)  Raising a claim for the first time to an appellate court on discretionary review does not constitute fair presentation of that claim for purposes of satisfying the exhaustion requirement.  *See Castille v. Peoples*, 489 U.S. 346, 351-52 (1989) (raising a new claim to a state court that has discretionary review does not constitute fair presentation); *Casey v. Moore*, 386 F.3d 896, 915-919 (9th Cir. 2004) (holding that "under *Castille*, [the petitioner] did not fairly present his federal law claims when he raised them for the first and only time upon petitioning for discretionary review to the [state supreme court].").  The Arizona Court of Appeals has only discretionary jurisdiction over petitions for review from the denial of post-conviction relief.  *See* Ariz. R. Crim. P. 32.9(f) (stating that the "appellate court may, in its discretion, grant review and order oral argument if deemed necessary . . . .")  Accordingly, Petitioner did not properly exhaust Ground One (g).

### 4.      Grounds One (f) and (g) are Procedurally Barred

As stated above, Petitioner did not fairly present Grounds One (f) and (g) to the state courts.  It would be futile for Petitioner to return to the state court to exhaust Grounds One (f) and (g) because a successive petition for post-conviction relief would be untimely, and these claims would be precluded from Rule 32 review because they could have been raised in Petitioner's prior post-conviction proceeding.  *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (2006) ("As a general rule, when ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.") (internal quotation omitted).  Accordingly, Grounds One (f), and (g) are technically exhausted and procedurally defaulted.  *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)); *see also Boerckel*, 526 U.S. at 848.  As discussed in Section III(E), Petitioner has not established any basis to excuse the procedural bar to habeas corpus review of Grounds One (f) and (g).

### B.      Grounds Three (b), (c), (d), and (e)

In Ground Three, Petitioner raises several claims of trial court error.  (Doc. 1 at 10.)  Respondents argue that Grounds Three (b), (c), (d), and (e) are barred from federal habeas corpus review.  As set forth below, the Court finds that Grounds Three (b) and (e) are procedurally barred, and Grounds Three (c) and (d) were not properly exhausted and are procedurally barred.

### 1.      Ground Three (b) is Procedurally Barred

In Ground Three (b), Petitioner argues that the trial court violated his Fifth Amendment right to a fair trial by ordering excessive security in the courtroom during trial.  (Doc. 1 at 10.)  Petitioner did not raise this claim on direct appeal.  (Doc. 10, Ex. Y.)  Rather, he raised it in his petition for post-conviction relief, and the trial court found it precluded pursuant to Rule 32.2(a)(3) because Petitioner had not presented it

previously.  (Doc. 10, Ex. TT; Doc. 10-2 at 99; Ex. WW at 1); *see* Ariz. R. Crim. P. 32.2(a)(3) (stating a defendant is precluded from post-conviction relief on any ground that was "waived . . . on appeal"); *Stewart v. Smith*, 46 P.3d 1067, 1070 (Ariz. 2002). Because the state court found that Petitioner's failure to comply with a state procedural rule precluded consideration of the claim asserted in Ground Three (b), federal habeas corpus review of that claim by this Court is barred because Rule 32.2(a)(3) is an independent and adequate state ground.  *See Smith*, 536 U.S. at 860 (finding Rule 32.2(a)(3) determinations independent of federal law); *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate).

### 2.    Ground Three (e) is Procedurally Barred

In Ground Three (e), Petitioner asserts that the trial court violated his Fifth Amendment right to a fair trial by failing to remove a juror who was biased against Petitioner and cried during the testimony of a witness.  (Doc. 1 at 10.)  Petitioner did not present this claim on direct appeal.  (Doc. 10, Ex. Y.)  Rather, he raised it in his petition for post-conviction relief (Doc. 10-2 at 98-99), and the trial court found the claim precluded pursuant to Rule 32.2(a)(3) because Petitioner had not previously presented it to the state court.  (Doc. 10, Ex. WW); *see* Ariz. R. Crim. P. 32.2(a)(1) and (3) (stating that a defendant is precluded from post-conviction relief on any ground "raisable on direct appeal" and any ground that was "waived . . . on appeal"); *Stewart*, 46 P.3d at 1070.  Because the state court determined that Petitioner's failure to comply with a state procedural rule precluded consideration of his claim asserted in Ground Three (e), federal habeas corpus review of that claim is barred because Rule 32.2(a)(3) is an independent and adequate state ground.  *See Smith*, 536 U.S. at 860; *Ortiz*, 149 F.3d at 932.

### 3.    Ground Three (c) was not Properly Exhausted

In Ground Three (c), Petitioner argues that the trial court erred by failing to instruct the jury that "all [of the] state['s] witnesses were granted immunity."  (Doc. 1 at 10.)  Petitioner did not raise this claim in his opening brief on direct appeal.  (Doc. 10, Ex. Y.)  Rather, he raised it for the first time in his petition for discretionary review to the

Arizona Supreme Court.  (Doc. 10, Ex. Y, Ex. EE at 2.)  Raising a claim for the first time to a state court on discretionary review does not constitute fair presentation to satisfy the exhaustion requirement.  *See Roettgen*, 33 F.3d at 38 ("Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."); *see also* Ariz. R. Crim. P. 31.19(c)(1) (providing petitions for review are limited to issues first presented on direct appeal to the Arizona Court of Appeals); *State v. Sepahi*, 78 P.3d 732, 735 n.3 (Ariz. 2003) (noting that an issue raised for the first time to the Arizona Supreme Court "was not preserved for . . . review").

Additionally, although Petitioner presented Ground Three (c) to trial court in his petition for post-conviction review (Doc. 10, Ex. TT; Doc. 10-2 at 96), he did not present that claim in his petition for review to the appellate court.  (Doc. 10, Ex. XX; Doc. 10-3 at 42-60.)  Thus, he did not properly exhaust Ground Three (c).  *See Crowell*, 483 F. Supp. 2d at 931-33 (stating that, in Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings).

### 4.    Ground Three (d) was not Properly Exhausted

In Ground Three (d), Petitioner argues that the trial court violated his Fifth Amendment right to a fair trial by allowing the State to "re-indict[] [him] three separate times . . . ."  (Doc. 1 at 10.)  On direct review, Petitioner asked the Arizona Court of Appeals to "look into" the fact that he was indicted three times, "to see if those three indictments was [sic] in the guidelines of the law."  (Doc. 10, Ex. Y; Doc. 10-1 at 159.)[9] Petitioner did not cite the Fifth Amendment.  (*Id.*)  The appellate court reviewed Petitioner's challenge to the three indictments for fundamental error, and found that no error, "fundamental or otherwise" occurred.  (Doc. 10, Ex. AA at 6-7.)

---

[9]    Because the page numbers on Exhibit Y do not start on the first page of that exhibit, the Court refers to Exhibit Y by the CM/ECF docket and page numbers. (Doc. 10-1 at 154-191.)

Although Petitioner challenged the three indictments on direct review, he did not fairly present his current Fifth Amendment claim to the state court because he did not "clearly state the federal basis and federal nature of the claim, along with relevant facts." *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). Accordingly, Petitioner did not properly exhaust Ground Three (d).[10]

**5.      Grounds Three (c)-(d) are Procedurally Barred**

As set forth above, Petitioner did not properly present Grounds Three (c) and (d) to the state courts and it would be futile for Petitioner to return to state court to try to properly exhaust these claims because a successive petition for post-conviction relief would be untimely, and these claims would also be precluded because they could have been raised in a Petitioner's prior post-conviction proceeding. *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also Bennett*, 146 P.3d 63, 67 (2006). Accordingly, Grounds Three (c) and (d) are technically exhausted and procedurally barred from federal habeas corpus review.[11] *See McKinney*, 730 F.3d at 913 n.6; *Boerckel*, 526 U.S. at 848.

**C.      Ground Four is Procedurally Barred**

In Ground Four, Petitioner argues that there is insufficient evidence to support his convictions in violation of the Fifth Amendment. (Doc. 1 at 11.) On direct appeal, Petitioner asserted that insufficient evidence supported his convictions, but he cited only Arizona case law and did not present a federal claim. (Doc. 10, Ex. Y; Doc. 10-1 at 170-171.) The appellate court rejected the claim on state law grounds. (Doc. 10, Ex. AA at 4-6.) Petitioner did not fairly present a federal sufficiency of the evidence claim to the

---

[10]   Respondents alternatively argue that this claim is not cognizable on habeas corpus review and that it lacks merit. (Doc. 10 at 49-50.) Having already found Ground Three (d) barred from federal habeas corpus review, the Court does not reach Respondents' alternative argument.

[11]   In Ground Three, Petitioner also generally argues that the trial court's errors cumulatively denied him a fair trial. (Doc. 1 at 10.) Petitioner did not exhaust this claim because he did not present a claim of cumulative error to the state courts (Doc. 10, Exs. Y, TT), and he cannot return to state court to properly exhaust this claim. *See Wooten v. Kirkland*, 540 F.3d 1019, 1025-26 (9th Cir. 2008) (finding cumulative error claim procedurally defaulted because it was not presented to the highest state court on appeal). Accordingly, federal habeas corpus review of Petitioner's claim of cumulative trial error asserted in Ground Three is procedurally barred.

state court on direct appeal because he did not "clearly state the federal basis and federal nature of th[is] claim" in state court.  *See Cooper*, 641 F.3d at 327.  His similar state law claim was insufficient to fairly present a federal claim on direct appeal, even if the federal basis of the claim was "self-evident."  *See Lyons*, 232 F.3d at 668; *Lacy v. Belleque*, 2010 WL 3866719, at *3 (D. Or. Sept. 21, 2010) (the petitioner's presentation of a state law challenge to the sufficiency of the evidence on appeal did not fairly present a federal sufficiency of the evidence claim and such a claim was barred from § 2254 review).

Petitioner presented a federal challenge to the sufficiency of the evidence in his petition for post-conviction relief.  (Doc. 10, Ex. TT, Doc. 10-2 at 108.)  The trial court, however, found that Petitioner had waived review of that claim by failing to raise it on direct appeal.  (Doc. 10, Ex. WW); *see* Ariz. R. Crim. P. 32.2(a)(1), (a)(3); *Stewart*, 46 P.3d at 1070 (explaining that for most trial error, the "State may simply show that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding" for preclusion under Rule 32.2(a)(3)) (internal quotation omitted).  Because the state court found that Petitioner's failure to comply with a state procedural rule precluded consideration of the claim asserted in Ground Four, habeas corpus review of that claim in this Court is barred because Rule 32.2(a)(3) is an independent and adequate state grounds.[12]  *See Smith*, 536 U.S. at 860 (finding Rule 32.2(a)(3) determinations independent of federal law); *Ortiz*, 149 F.3d at 932.

### D.  Ground Five is Procedurally Barred

In Ground Five, Petitioner asserts that he was "convicted on the basis of an identification that was unconstitutionally suggestive."  (Doc. 1 at 16.)  Petitioner did not raise this claim on direct appeal.  (Doc. 10, Ex. Y.)  Rather, he raised it in his petition for post-conviction relief.  (Doc. 10, Ex. TT; Doc. 10-2 at 117.)  The trial court found that

---

[12]  Respondents alternatively argue that Petitioner's claim in Ground Four lacks merit.  (Doc. 10 at 50-57.)  Having already found Ground Four barred from federal habeas corpus review, the Court does not reach Respondents' alternative argument. Although the Court need not reach the merits of Ground Four, upon review of the record and the discussion in Respondents' Answer (Doc. 10 at 50-57), the Court finds that sufficient evidence supports Petitioner's convictions.

1    Petitioner had waived Rule 32 review of that claim by failing to raise it on direct appeal.

2    (Doc. 10, Ex. WW); *see* Ariz. R. Crim. P. 32.2(a)(1) and (3); *Stewart*, 46 P.3d at 107.

3    Because the state court determined that Petitioner's failure to comply with a state

4    procedural rule precluded consideration of the claim asserted in Ground Five, federal

5    habeas corpus review of that claim is barred because Rule 32.2(a)(3) is an independent

6    and adequate state ground.  *See Smith*, 536 U.S. at 860; *Ortiz*, 149 F.3d at 932.

7         **E.    Petitioner has not Established a Basis to Overcome the Procedural Bar**

8    Because Petitioner's claims asserted in Grounds One (f) and (g), Grounds Three

9    (b), (c), (d), and (e), Ground Four, and Ground Five are procedurally barred, federal

10   habeas corpus review is unavailable unless Petitioner establishes "cause and prejudice" or

11   a "fundamental miscarriage of justice" to overcome the procedural bar.  *See Coleman*,

12   501 U.S. at 749.  For the reasons set out below, the Court finds that Petitioner has not

13   established a basis to overcome the procedural bar to federal habeas corpus review of

14   Grounds One (f) and (g), Grounds Three (b)-(e), Ground Four, and Ground Five.

15   Accordingly, the Court recommends that habeas corpus review of those claims be denied

16   and does not consider the merits of those claims.

17              **1.    Fundamental Miscarriage of Justice**

18   A federal court may review the merits of a procedurally defaulted claim if the

19   petitioner demonstrates that failure to consider the merits of that claim will result in a

20   "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

21   "fundamental miscarriage of justice" occurs when "'a constitutional violation has

22   probably resulted in the conviction of one who is actually innocent.'"  *Id.* (citing *Murray*

23   *v. Carrier*, 477 U.S. 478, 496 (1986)).

24   To establish a fundamental miscarriage of justice, a petitioner must present "new

25   reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness

26   accounts, or critical physical evidence — that was not presented at trial."  *Schlup,* 513

27   U.S. at 324.  The petitioner has the burden of demonstrating that "it is more likely than

28   not that no reasonable juror would have convicted him in light of the new evidence."  *Id.*

at 327.  Although Petitioner generally asserts that failure to consider the merits of his claims will result in a fundamental miscarriage of justice (Doc. 14 at 2), he has not met *Schlup's* high standard.  Accordingly, this exception does not excuse the procedural bar.

### 2.      Cause and Prejudice

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice."  *Coleman*, 501 U.S. at 750.  To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.  *Teague*, 489 U.S. at 298.  A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause.  *Murray*, 477 U.S. at 488.

"Prejudice" is actual harm resulting from the constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations.  *Smith v. Murray*, 477 U.S. 527, 533 (1986).

### a.      Indigence, Lack of Legal Knowledge, Loss of Transcripts

In an attempt to establish cause, Petitioner first argues that he is indigent and that he is not represented by counsel.  (Doc. 14 at 3.)  Petitioner's status as an inmate, lack of legal knowledge and assistance, and limited legal resources do not establish cause to excuse the procedural bar.  *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir.

1988) (petitioner's mental health issues and reliance upon jailhouse lawyers did not constitute cause).

Petitioner also argues that during a prison move, he "lost most of his court and legal transcripts which limits his ability to present proof." (Doc. 14 at 3.) Petitioner claims that he cannot afford copies of the lost transcripts. (*Id.*) Although Petitioner contends that he lost certain transcripts, he does not state when he lost the transcripts, identify which "court and legal transcripts" he lost, or explain how the alleged lack of transcripts prevented him from properly exhausting his claims in state court. *See United States v. Lewis*, 605 F.2d 379 (8th Cir. 1979) (holding that prisoner does not have an absolute right to transcripts to collaterally attack his sentence).

Additionally, even if Petitioner lost his transcripts during direct and collateral review, he was able to file extensive petitions for review raising numerous claims with the trial court and court of appeals (Doc. 10, Exs. Y, TT, XX), and he has not explained how the alleged absence of his transcripts prevented him from fairly presenting all of his claims to the state courts. Accordingly, the alleged loss of transcripts does not establish cause to overcome the procedural bar.

### b.   Ineffective Assistance of Appellate Counsel

Petitioner also argues that he "cannot be held responsible for having ineffective appeal counsel." (Doc. 14 at 2.) To the extent that this statement can be construed as arguing that the ineffective assistance of appellate counsel constitutes cause to overcome the procedural bar, that claim fails. Although in some circumstances the ineffective assistance of appellate counsel may establish cause for a procedural default, "a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, 477 U.S. at 488-89; *see also Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Tacho*, 862 F.2d at 1381 (same).

The only claims of ineffective assistance of appellate counsel that Petitioner fairly presented to the state trial and appellate courts on post-conviction review are his claims that appellate counsel was ineffective for failing to review the three grand jury indictments, failing to raise the issue of jury tampering or influence, failing to challenge the unlawful taking of Plaintiff's fingerprints, and failing to raise the issue of a "verdict form that was in question at trial." (Doc. 10-2 at 116; Doc. 10-3 at 55-56.)

Petitioner does not present those claims of ineffective assistance of appellate counsel as a ground for relief in the pending Petition. (Doc. 1.) Although Ground Three (d) asserts a Fifth Amendment violation based on the fact that Petitioner was indicted three times (Doc. 1 at 10), Petitioner did not exhaust a claim that appellate counsel was ineffective for failing to raise a Fifth Amendment challenge to his three indictments. Rather, he exhausted a general claim that appellate counsel was ineffective for "failing to review three grand jury indictments." (Doc. 10-3 at 56.) Thus, the ineffective assistance of appellate counsel does not establish cause to overcome the procedural bar to habeas corpus review of Petitioner's procedurally barred claims.

### c.    Ineffective Assistance of Post-Conviction Counsel

Finally, Petitioner attempts to establish cause based on the alleged ineffective assistance of post-conviction counsel. (Doc. 14 at 1-2.) Generally, any errors of counsel during the post-conviction proceedings cannot serve as a basis for cause to excuse a petitioner's procedural default of other claims. *See Coleman*, 501 U.S. at 752. However, in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1315 (2012), the Supreme Court established a limited exception to this general rule. The Court held that the ineffective assistance of post-conviction counsel "at initial-review collateral review proceedings" — while not stating a constitutional claim itself — may establish cause to excuse procedural default of claims of ineffective assistance of trial counsel when a post-conviction proceeding represents the first opportunity under state law for a petitioner to litigate such claims. *Id.* at 1315.

"Cause" is established under *Martinez* when: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral review proceeding. *Trevino v. Thaler*, __ U.S.__, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21).

The *Martinez* exception applies only to the ineffectiveness of post-conviction counsel in the initial post-conviction review proceeding. It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." *Id.* at 1320. *Martinez* is concerned that, if ineffective assistance of counsel claims were not brought in the collateral proceeding that provided the first occasion to raise such claims, then the claims could not be brought at all. *Id.* at 1316. Therefore, a petitioner may not assert "cause" to overcome the procedural bar based on attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

Because the *Martinez* cause standard applies only to defaulted ineffective assistance of counsel claims, the only claims to which it might apply in this case are Petitioner's claims of ineffective assistance of trial counsel asserted in Grounds One (f) and (g). Accordingly, the Court considers whether Petitioner has shown a "substantial" claim of ineffective assistance of trial counsel in Grounds One (f) and (g).[13]

A "substantial" claim "has some merit." *Martinez*, 132 S. Ct. at 1318. Like the standard for issuing a certificate of appealability, to establish a "substantial" claim, a

---

[13] The third and fourth prongs of the *Martinez* test are not at issue because an Arizona petitioner cannot bring a claim of ineffective assistance of trial or appellate counsel until the "initial-review state court collateral proceeding . . . ." *See Nguyen v. Curry*, 736 F.3d 1287, 1294-95 (9th Cir. 2013).

petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (internal quotations omitted).   In other words, a claim is "'insubstantial' if it does not have any merit or is wholly without factual support." *Id.* Determining whether an ineffective assistance of counsel claim is substantial requires a district court to examine the claim under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

### i.     Establishing an Ineffective Assistance of Counsel Claim

To establish a claim of ineffective assistance of counsel a petitioner must demonstrate that counsel's performance was deficient under prevailing professional standards, and that he suffered prejudice as a result of that deficient performance. *Id.* at 687-88.   To establish deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 699.   A petitioner's allegations and supporting evidence must withstand the court's "highly deferential" scrutiny of counsel's performance, and overcome the "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90.   A petitioner bears the burden of showing that counsel's assistance was "neither reasonable nor the result of sound trial strategy," *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001), and actions by counsel that "'might be considered sound trial strategy'" do not constitute ineffective assistance. *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

To establish prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*   Courts should not presume prejudice. *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000).   Rather, a petitioner must

affirmatively prove actual prejudice, and the possibility that a petitioner suffered prejudice is insufficient to establish *Strickland's* prejudice prong. *See Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001) ("[A petitioner] must 'affirmatively prove prejudice.' . . . This requires showing more than the possibility that he was prejudiced by counsel's errors; he must demonstrate that the errors *actually* prejudiced him.") (quoting *Strickland*, 466 U.S. at 693) (emphasis in original).   However, the court need not determine whether counsel's performance was deficient if the court can reject the claim of ineffectiveness based on the lack of prejudice.  *See Jackson*, 211 F.3d at 1155 n.3 (the court may proceed directly to the prejudice prong).

### ii.      Ground One (f)

In Ground One (f), Petitioner asserts that trial counsel was ineffective for not presenting the defense that "somebody else committed the crime."  (Doc. 1 at 6.)  The record, however, reflects that trial counsel *did* pursue a defense of mistaken identity and argued that someone other than Petitioner shot the victims.  (Doc. 10, Ex. HHH at 4-6.) Because trial counsel pursued a mistaken identify theory of defense, Petitioner's claim of ineffective assistance of counsel raised in Ground One (f) is not substantial. Accordingly, Petitioner has not presented a "substantial" claim of ineffective assistance of trial counsel in Ground One (f) to establish "cause" under *Martinez* to overcome the procedural bar to federal habeas corpus review of Ground One (f).

### iii.      Ground One (g)

In Ground One (g), Petitioner argues that trial counsel was ineffective for failing to challenge the three indictments for fundamental error.  (Doc. 1 at 7.)  On direct appeal, Petitioner asked the appellate court to consider whether the three indictments complied with "the guidelines of the law."  (Doc. 10, Ex. Y.)  On review of that claim, the appellate court explained that the State twice re-filed the criminal case to correct the charges against Petitioner.  The first time, the State alleged first-degree, rather than second-degree murder.  (Doc. 10, Ex. AA at 7.)  The second time, the State added allegations of aggravating factors.  (*Id.*)  The appellate court found "no error," "fundamental or

1  otherwise," with the three indictments.   (*Id.*)   Petitioner has not presented any legal

2  argument to support his assertion that State improperly indicted him three times.

3      Because the State did not err in re-filing the case two times to correct the charges

4  against Petitioner, trial counsel was not ineffective for failing to challenge the

5  indictments for "fundamental error."  *See Chippolla v. Valdez*, 2008 WL 656033, at *13

6  (D. Idaho Mar. 6, 2008) (concluding that because the underlying *Brady* claim lacked

7  merit, the petitioner's "corresponding ineffective assistance of counsel claim has no merit

8  for lack of showing prejudice to [the petitioner's] defense.").   Therefore, Petitioner has

9  not presented a "substantial" claim of ineffective assistance of trial counsel in Ground

10  One (g) to establish "cause" under *Martinez* to overcome the procedural bar to federal

11  habeas corpus review of Ground One (g).

## IV.    Merits Review of Grounds One (a) – (e), Two, Three (a), and Six

13      Petitioner properly exhausted Grounds One (a)-(e), Two, Three (a), and Six, and

14  these claims are properly before the Court on habeas corpus review.  However, as set

15  forth below, these claims lack merit.

### A.    Federal Review of Claims Adjudicated in State Court

17      If a habeas petition includes a claim that was "adjudicated on the merits in State

18  court proceedings," federal court review is limited by § 2254(d).  Under § 2254(d)(1), a

19  federal court cannot grant habeas relief unless the petitioner shows: (1) that the state

20  court's decision "was contrary to" federal law as clearly established in the holdings of the

21  United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __

22  U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of"

23  such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the

24  facts" in light of the record before the state court.[14]  28 U.S.C. § 2254(d)(2); *Harrington*

---

25  

26      [14]   When applying 28 U.S.C. § 2254(d), the district court considers that "last
reasoned state court opinion" of the state court.  *Ylst v. Nunnemaker*, 501 U.S. 979, 803
(1991).  When a higher state court denies the claim summarily, the federal court looks

27  through to the last reasoned decision.  *See Avila v. Gomez*, 297 F.3d 911, 918 (9th Cir.
2002).  Because the Arizona Supreme Court summarily affirmed the appellate court's

28  decision on direct review (Doc. 10, Ex. GG), the appellate court's decision is the last
reasoned decision of the state court on direct appeal.  (Doc. 10, Ex. AA.)  (cont'd).

*v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011). This standard is "difficult to meet." *Richter*, 131 S. Ct. at 786. It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision. *Greene*, 132 S. Ct. at 44. A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

When a state court decision is deemed to be "contrary to" or an "unreasonable application of" clearly established federal law, a petitioner is not entitled to habeas corpus

---

Because the Arizona Court of Appeals summarily affirmed the trial court's ruling on post-conviction review (Doc. 10, Ex. AAA), the trial court's decision (Doc. WW) is the last reasoned decision on post-conviction review. Moreover, even if the state courts' decisions are unaccompanied by an explanation, Petitioner's "burden must still be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

1   relief unless the erroneous state court ruling also resulted in actual prejudice as defined in

2   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *See Benn v. Lambert*, 283 F.3d 1040,

3   1052 n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue

4   had a "substantial and injurious effect or influence in determining the jury's verdict."

5   *Brecht*, 507 U.S. at 631.

6          When a habeas petition alleges ineffective assistance of counsel under *Strickland*,

7   466 U.S. 668 (1984), the *Strickland* prejudice standard applies and the court does not

8   engage in a separate analysis applying the *Brecht* standard.  *See Avila v. Galaza*, 297 F.3d

9   911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*, 211 F.3d 1148, 1154 n.2 (9th

10   Cir. 2000) (stating that the court "need not conduct harmless error review of *Strickland*

11   violations under *Brecht* . . . because '[t]he; *Strickland* prejudice analysis is complete in

12   itself; there is no place for additional harmless-error review.")).

13      **B.      Grounds One (a) – (e)**

14          In Ground One, Petitioner raises seven claims of ineffective assistance of trial

15   counsel.  As previously discussed, Grounds One (f) and (g) are procedurally barred.  *See*

16   Section III.   Petitioner's remaining claims in Ground One lack merit.   The clearly

17   established federal law governing Petitioner's claims of ineffective assistance of counsel

18   is *Strickland*, 466 U.S. 668.  *See* Section  III(E)(2)(c)(i).  Therefore, the Court considers

19   Plaintiff's claims of ineffective assistance of counsel under *Strickland*.

20          **1.      Ground One (a)**

21          In Ground One (a), Petitioner asserts that trial counsel was ineffective for

22   requesting numerous trial continuances in violation of Petitioner's right to a speedy trial.

23   (Doc. 1 at 6.)  Petitioner presented this claim to the trial and appellate courts on post-

24   conviction review.  (Doc. 10, Ex. TT, XX.)  The state court rejected this claim on the

25   ground that trial counsel's requests for continuances were a matter of trial strategy and

26   thus, did not support a claim of ineffective assistance of counsel.  (Doc. 10, Ex. WW at

27   2.)  "In determining whether the defendant received effective assistance of counsel, '[the

28   court] will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty

vision of hindsight,' but rather, will defer to counsel's sound trial strategy." *Murtishaw*, 255 F.3d at 939 (quoting *Strickland*, 466 U.S. at 689). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681.

Petitioner has not presented any evidence indicating that trial counsel's decision to request several continuances of the trial date was not "sound trial strategy" based on trial counsel's professional judgment. Accordingly, Petitioner's assertion that trial counsel requested numerous continuances does not support a claim for ineffective assistance of counsel, and Petitioner cannot show that the state court's rejection of that claim was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

### 2.    Ground One (b)

In Ground One (b), Petitioner argues that trial counsel was ineffective because she "neglect[ed] to do any pre-trial investigation," and did not hire an expert witness to do a "crime scene reconstruction." (Doc. 1 at 6.) Petitioner raised these claim on post-conviction review. (Doc. 10, Ex. TT.) The state court rejected Ground One (b) finding that counsel's alleged actions were strategic decisions (Doc. 10, Ex. WW at 2), and Petitioner has not shown that the state court's rejection of this claim was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of *Strickland*.

"Counsel has a duty to conduct a reasonable investigation so that he can make an informed decision about how best to represent his client." *Frierson v. Woodford*, 463 F.3d 982, 989 (9th Cir. 2006) (citing *Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.")) "Thus, counsel may render ineffective assistance 'where he neither conducted a reasonable investigation nor made a showing of strategic reasons for failing to do so.'" *Id.* (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994)).

1    Other than asserting that trial counsel failed to obtain an expert witness for crime

2    scene reconstruction, Petitioner does not describe the pretrial investigation that trial

3    counsel should have conducted.  (*Id.*)   Additionally, Petitioner does not describe the

4    specific information that counsel would have obtained upon further investigation.  The

5    "Joint Case Management Plan" details trial counsel's preparation of the case (Doc. 10,

6    Ex. J), and indicates that trial counsel conducted sufficient pretrial investigation,

7    including interviewing several witnesses and securing eyewitnesses to testify on

8    Petitioner's behalf.  Additionally, Petitioner has not shown that, but for counsel's failure

9    to conduct further investigation, there is a reasonable likelihood that the outcome of his

10   trial would have been different.   Accordingly, Petitioner has not shown that trial

11   counsel's pretrial investigation was deficient or that he was prejudiced by that allegedly

12   deficient performance.  *See Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011)

13   ("cursory and vague [ineffective assistance of counsel claim] cannot support habeas

14   relief."); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which

15   are not supported by a statement of specific facts do not warrant habeas relief.").

16   Petitioner also fails to establish that trial counsel was deficient for failing to hire

17   an expert to reconstruct the crime scene.  At trial, the State's expert testified that the

18   bullet trajectories showed that the bullets that hit the victims' car were shot "from a very

19   level . . . angle, meaning the shooter would have been low to the vehicle to be such dead-

20   on to the door," which supported eyewitness testimony that Petitioner shot at the car from

21   a crouched position.   (Doc. 10, Ex. EEE at 147, 71-74, 138-47.)   The investigating

22   detective opined that the bullet that hit L.H. above her right eye and caused her death was

23   fired from a standing position and likely went through an open window.  (Doc. 10,

24   Ex. DDD at 139, 146; Ex. FFF at 134.)   The detective testified that this theory was

25   consistent with eyewitness accounts that Petitioner was initially standing and then

26   assumed a crouching position.  (Doc. 10, Ex. FFF at 134.)   Trial counsel argued there

27

28

1    could have been two shooters because of the two different angles of the bullets.[15]

2    (Doc. 10, Ex. HHH at 60.)

3           As the state court found, whether to hire an expert to reconstruct the crime scene

4    was a matter of trial strategy.  (Doc. 10, Ex WW.)  Trial counsel's theory of defense was

5    mistaken identity and she argued that someone other than Petitioner shot the victims.

6    (Doc. 10, Ex. HHH, at 44-63.)  This theory of defense did not require trial counsel to

7    challenge the State's ballistic evidence.   Additionally, pursuing a mistaken identify

8    defense was a reasonable trial strategy because the victims initially called the shooter

9    "Steven," they gave inconsistent statements about the shooting, and a defense witness

10   testified that Petitioner was not at Amvets the night of the shooting.  (Doc. 10, Exs. DDD

11   at 113-15, Ex. EEE at 32, 177-79; Ex. FFF at 50-53; Ex. GGG, at 58, 65, 67, 109, 112.)

12          Trial counsel's reasonable, strategic decision not to pursue a defense based on the

13   ballistics evidence in favor of a different theory of defense does not constitute ineffective

14   assistance.  *See Bean v. Calderon*, 163 F.3d 1073, 1082 (9th Cir. 1998) (finding that "it

15   was within the broad range of professionally competent assistance for trial counsel to

16   choose not to present psychiatric evidence which would have contradicted the primary

17   defense theory."); *see also Richter*, 131 S. Ct. at 789 (finding it was reasonable for state

18   court to conclude "defense counsel could follow a strategy that did not require the use of

19   [blood evidence] experts," noting "[c]ounsel was entitled to formulate a strategy that was

20   reasonable at the time and to balance limited resources in accord with effective trial

21   tactics and strategies"); *Burger v. Kemp*, 483 U.S. 776, 793 (1987) (finding no ineffective

22   assistance when counsel did not present evidence of the defendant's violent tendencies

23

24   _____

25          [15]  Trial counsel also elicited favorable evidence from the State's experts.   On

26   cross-examination of the firearm expert, trial counsel established that several different
     caliber casings were found near the scene of the shooting, and later argued that
27   individuals other than Petitioner could have fired weapons that caused the victims'
     injuries.  (Doc. 10, Ex. EEE at 153-54, 158; Ex. FFF at 28-32; Ex. GGG at 4-10;
28   Ex. HHH at 61.)  Trial counsel also introduced evidence that the two .9 mm bullets that
     were recovered from L.H.'s head and D.H.'s foot could have been fired from separate
     guns.  (Doc. 10, Ex. FFF at 143-45, 156-57; Ex. GGG at 10.)

1   that conflicted with the defense strategy of characterizing defendant's actions as the result

2   of his co-defendant's strong influence on his will).

3   Even assuming that trial counsel was deficient for failing to hire an expert on

4   crime scene reconstruction, Petitioner's claim of ineffective assistance of counsel fails

5   because he has not shown prejudice.  Petitioner speculates that an expert would have

6   testified about alternative theories of the shooting based on the ballistic evidence.

7   (Doc. 1 at 22.)  However, Petitioner does not describe the testimony that an expert would

8   have given, or establish that an expert witness would have been available and willing to

9   testify at his trial.  Thus, he has not established that he was prejudiced by trial counsel's

10   failure to hire an expert.  *See Strickland*, 466 U.S. at 691-92; *Wildman v. Johnson*, 261

11   F.3d 832, 839 (9th Cir. 2001) (finding "speculation" about whether counsel could have

12   retained an expert is "insufficient to establish prejudice"); *Grisby v. Blodgett*, 130 F.3d

13   365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not

14   enough to establish prejudice."); *Earhart v. Johnson*, 132 F.3d 1062, 1067-68 (5th Cir.

15   1998) (finding that the petitioner did not establish prejudice from trial counsel's failure to

16   hire a ballistic expert because petitioner did not identify an "expert witness available to

17   testify on his behalf or the type of testimony such witness would have provided beyond

18   that elicited at trial," or "how any expert testimony would affect the outcome of the

19   trial").

20   Therefore, Petitioner has not shown that trial counsel was ineffective for failing to

21   conduct further investigation or for failing to hire an expert.  Accordingly, he has not

22   shown that the state court's rejection of this claim of ineffective assistance was based on

23   an unreasonable determination of the facts, or that it was contrary to, or an unreasonable

24   application of, Supreme Court precedent.  28 U.S.C. § 2254(d).

### 3.  Ground One (c)

26   Petitioner next argues that trial counsel was ineffective for not giving him police

27   reports and "discovery," which impeded his ability to participate in his defense.  (Doc. 1

28   at 6.)  Petitioner, however, does not identify the police reports or discovery that trial

counsel withheld from him.  (*Id.*)  Additionally, he does not explain how, but for trial counsel's failure to give him police reports and discovery, there is a reasonable probability that the result of his trial would have been different.  *See Strickland*, 466 U.S. at 691-94.  Petitioner's conclusory assertions do not support a claim for habeas corpus relief.  *See Greenway*, 653 F.3d at 804; *James*, 24 F.3d at 26.  Accordingly, Petitioner has not shown that the state court's rejection of his claim (Doc. 10, Ex. WW) was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, *Strickland*.  See 28 U.S.C. § 2254(d).  Therefore, he is not entitled to habeas corpus relief on this claim.

### 4.        Ground One (d)

In Ground One (d), Petitioner argues that trial counsel was ineffective for failing to request that a juror be removed from the jury panel, or to move for a mistrial based on that juror's communication with the prosecutor.  (Doc. 1 at 6.)  The trial court rejected this claim on post-conviction review (Doc. 10, Ex. WW), and Petitioner has not shown that the state court's resolution of this claim was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d).

"In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . ."  *Remmer v. United States*, 347 U.S. 227, 229 (1954).  This presumption, however, is "not conclusive" and the government has the burden of establishing, "after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant."  *Id.*

The record reflects that after lunch on the fourth day of Petitioner's trial, and before the jury returned to the courtroom, the prosecutor informed the trial court that "When I was in the elevator on the way back from lunch, one of the jurors was in the elevator with me.  I don't know his name, but I knew his face.  [B]ut when we got to the 13th floor I looked at my watch and he made a comment, 'You are more nervous than I

am.' I didn't respond." (Doc. 10, Ex. FFF at 70.)  The prosecutor asked the trial court to "remind the jury" to not "have contact with the lawyers." (*Id.*)  Defense counsel agreed that it was appropriate for the trial court to remind the jurors not to communicate with the lawyers. (*Id.*)  When the jurors returned to the courtroom, the trial court reminded them "not to talk to any of the lawyers." (*Id.* at 70-71.)

Thus, the record reflects that a juror made a comment to the prosecutor that did not relate to the specifics of Petitioner's case.  The prosecutor did not respond, and immediately reported the incident to the trial court and defense counsel.  Considering the trial court's and the parties' agreement that the situation could be adequately addressed by reminding the jury of the admonition against talking to the lawyers, the trial court likely would have denied any motion to remove the juror or to grant a mistrial based on the juror's limited comment to the prosecutor.

Accordingly, Petitioner has not shown that trial counsel was ineffective for failing to move for removal of the juror or for a mistrial based on that juror's comment to the prosecutor.  *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel cannot be ineffective for failing to raise a meritless objection); *see also James*, 24 F.3d at 27 ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.").  Petitioner also has not shown that the state court's rejection of this claim was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d).  Therefore, he is not entitled to habeas corpus relief on this claim.

### 5.    Ground One (e)

In Ground One (e), Petitioner asserts that trial counsel was ineffective for failing to move "for a mistrial when jury members and spectators started crying when state witness [M.R.] was on the stand testifying." (Doc. 1 at 6.)  The trial court rejected this claim on post-conviction review (Doc. 10, Ex. WW), and Petitioner has not shown that state court's resolution of this claim was based on an unreasonable determination of the

1   facts, or that it was contrary to, or based on an unreasonable application of, *Strickland*.

2   *See* 28 U.S.C. § 2254(d).

3       Ground One (e) apparently refers to M.R.'s testimony describing how she was

4   shot in the foot and discovered that other people in the car with her were also shot and

5   then asking the trial court if she could "take a minute." (Doc. 10, Ex. EEE, at 22.) After

6   excusing the jury, the trial court told M.R. that the court would "give [her] a moment."

7   (*Id.*) Defense counsel requested that the trial court remove "the other individuals [who

8   were] crying in the courtroom" because it was "distracting for the jurors to listen to

9   [M.R.'s] testimony when other people [were] making noises in the back of the

10  courtroom." (*Id.* at 23.) The trial court instructed the spectators that the jurors needed

11  "to be able to hear everything" that was being said in the courtroom and that they could

12  not hear if there were loud or distracting noises in the courtroom. (*Id.*) The trial court

13  directed that "[i]f anybody believes that they can't listen to the testimony and stay

14  composed, then they should step outside. If you are able to stay composed, you are free

15  to remain." (*Id.*) After the jury returned to the courtroom, the trial court had a discussion

16  at the bench with counsel during which the prosecutor confirmed that the victim witness

17  advocate could escort a victim out of the courtroom "if she starts to cry again." (*Id.* at

18  23-24.)

19      Although "a defendant's due process rights include a right to an unbiased and

20  impartial jury, . . . not every outburst or disruption warrants a new trial." *Byers v.*

21  *Basinger*, 610 F.3d 980, 988 (7th Cir. 2010); *see also Smith v. Phillips*, 455 U.S. 209, 217

22  (1982) (stating that "due process does not require a new trial every time a juror has been

23  placed in a potentially compromising situation" and that "it is virtually impossible to

24  shield jurors from every contact or influence that might theoretically affect their vote").

25  Here, the trial transcript suggests that several spectators cried during M.R's testimony.

26  (Doc. 10, Ex. EEE at 23.) Petitioner' trial counsel immediately addressed the issue of

27  crying spectators with the court, asking for the removal of the disruptive individuals from

28  the courtroom. (*Id.*) In response to trial counsel's request and outside of the presence of

1    the jury, the trial court instructed the spectators to leave if they could not listen to the

2    testimony and "stay composed."  (*Id.*)  Under these circumstances, Petitioner has not

3    shown that trial counsel was deficient for failing to move for a mistrial based on the

4    crying during M.R.'s testimony.

5    Additionally, Petitioner has not alleged, or shown, that he was prejudiced by trial

6    counsel's allegedly deficient performance.  In addition to instructing the spectators to

7    either compose themselves or to leave the courtroom, the trial court twice instructed the

8    jury that it should not "be influenced by sympathy or prejudice."  (Doc. 10, Ex. DDD at

9    13; Ex. HHH at 21.)  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is

10   presumed to follow its instructions."); *see also Kinnamon v. Scott*, 40 F.3d 731, 734 (5th

11   Cir. 1994) (finding that the emotional outburst of the victim's daughter directed at the

12   defendant in jury's presence was not "prejudicial error of constitutional magnitude,"

13   noting, "[t]hat the young girl was upset and angry at the person accused by the state as

14   the murderer of her father communicated nothing new to the jury.").

15   Therefore, Petitioner has not shown that the state court's rejection of Ground

16   One (e) was based on an unreasonable determination of the facts, or that it was contrary

17   to, or based on an unreasonable application of, *Strickland*.  *See* 28 U.S.C. § 2254(d).

18   Therefore, he is not entitled to habeas corpus relief on this claim.

19          **C.    Ground Two**

20          In Ground Two, Petitioner asserts that the "prosecutor knowingly used perjured

21   testimony to obtain a conviction."  (Doc. 1 at 8.)  Petitioner contends that four of the

22   State's witnesses (TyR, MR, DH, and the investigating detective) committed perjury and

23   that the prosecution knowingly used that perjured testimony at trial.  (*Id.*)  A criminal

24   defendant's right to due process is violated when false testimony is used to convict him.

25   *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To prevail on a false testimony claim,

26   the petitioner must show that: "(1) the testimony (or evidence) was actually false, (2) the

27   prosecution knew or should have known that the testimony was actually false, and (3) the

28

false testimony was material." *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013) (internal quotation omitted).

On direct appeal, Petitioner argued that the prosecution either knowingly used, or failed to correct, false testimony because the victims testified inconsistently at trial. (Doc. 10-1 at 167-69.) The appellate court rejected Petitioner's claim as "unsubstantiated," and unsupported by the record. (Doc. 10, Ex. AA at 5.) Petitioner has not shown that state court's resolution of this claim was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, controlling Supreme Court precedent. *See* 28 U.S.C. § 2254(d); *see also Mitchell*, 540 U.S. at 16 ("A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." (quoting *Early*, 537 U.S. at 8)).

Petitioner has not presented any support for his assertion that the testimony of the State's witnesses was false — rather than merely inconsistent — and that the prosecutor knew the testimony was false. *See Schad v. Ryan*, 671 F.3d 708, 717 (9th Cir. 2011) (finding that even if a state's witnesses testimony was false, a petitioner's *Napue* claim failed because there was no evidence that the state "knew or should have known that [the witness]'s testimony was false"). Additionally, as the state court found, the state court record does not support Petitioner's claim that his conviction was based on false testimony.

### 1.    Ty.R's Testimony

At trial, Ty.R. testified that she saw S.R. fire a shot in the air, and that she saw Petitioner shoot at the car in which she was a passenger. She testified that "[a]fter the first shot[,] he immediately squatted down and fired towards the car." (Doc. 10, Ex. EEE at 73.) She also described where S.R. and Petitioner were standing in relation to the car. (*Id.* at 73-74.) On cross examination, defense counsel elicited testimony that Ty.R. previously told the police that she "didn't know who fired any shots" and that she "saw the first shot fired" by "a guy squatting by the car" who she had "never seen . . . before."

(*Id.* at 82-86.)  Ty.R. explained that she learned S.R.'s and Petitioner's names after the shooting, but she did not know their names at the time of the shooting.  (*Id.* at 86.) Petitioner also presented the testimony of the detective who had interviewed Ty.R. (Doc. 10, Ex. GGG at 29-34.)  This detective testified that although Ty.R. said that she did not know S.R.'s and Petitioner's names at the time of the shooting, during the investigation, Ty.R. told him that she saw two individuals holding guns, one standing and shooting a gun in the air, and the other squatting and firing a gun at the car.  (*Id.* at 43-46.)  She said that she later learned these individuals' names.

Petitioner alleges that Ty.R. committed perjury at trial because she "could not have seen anyone shooting" based on her location in the car, she changed her story "after discussing the case with the prosecutor," and she did not actually "see the shooter" and "only heard from a friend it was [Petitioner]." (Doc. 1 at 8.)  Petitioner has not cited any evidence to support his assertion that the prosecutor influenced Ty.R.'s testimony.  (*Id.*) Additionally, at trial and during her interviews with the police, Ty.R. said she saw Petitioner shooting at the car.  (Doc. 10, Ex. EEE at 72-74.)  She explained that although she did not know Petitioner's name until after the shooting, she saw him shooting at the car.  (Doc. 10, Ex. EEE at 72-74; Ex. GGG at 43-46.)

Although Ty.R. made some inconsistent statements, which defense counsel pointed out at trial, inconsistent statements are "not enough for a *Napue* violation."  *See United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011) ("We cannot presume that the prosecutor knew that the prior [inconsistent] statement was true but elicited perjured testimony anyway.") (internal quotation omitted).  The record does not support a finding that Ty.R.'s trial testimony was false or that the prosecutor knew it was false.  *See United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1989) ("The record does not show and we do not presume that the prosecutor used false testimony.").

## 2. M.R.'s Testimony

Petitioner also claims that M.R. gave false testimony at trial.  (Doc. 1 at 8.)  On direct-examination, M.R. testified that she saw S.R. with a gun, heard "gunfire," "brought

[her] legs up towards [her] chest area and put [her] head down [on her] chest," and was then shot in the left foot.  (Doc. 10, Ex. EEE at 21-22, 24-25.)  On cross-examination, M.R. testified that she saw Petitioner fire a gun, and that he was "squatted down at that time."  (*Id.* at 37-40.)  M.R. also testified that she told detectives that she saw Petitioner with a gun.  (*Id.*)

On re-direct examination, M.R. testified that she "probably" saw Petitioner with a gun.  (*Id.* at 54-55.)  In response to questions from the jury, M.R. testified that she saw Petitioner with a gun, that it was "probably" pointed towards the floor of the car, and that she did not see who fired shots into the car.  (*Id.* at 57-58.)  The prosecutor then asked follow-up questions and M.R. clarified that although she saw Petitioner with a gun, she did not see anyone shoot at the car but only heard the gunfire.  (*Id.* at 62-63.)

Although M.R. gave inconsistent testimony at trial, inconsistent testimony alone does not support a *Napue* violation.  *See Bingham*, 653 F.3d at 995.  Additionally, M.R.'s testimony that she saw Petitioner shoot at the car was elicited by defense counsel on cross-examination, not by the prosecutor.  (Doc. 10, Exhibit EEE at 37-40.)  The prosecutor clarified that M.R. did not see who shot at the car.  (*Id.* at 62-63.)  Thus, the record does not indicate that the prosecutor knowingly presented false testimony.

### 3.   D.H.'s Testimony

Petitioner also claims that D.H. gave inconsistent testimony at trial and that on re-direct examination, the prosecutor "persuade[d] [D.H] into perjured statements by leading her to say that she [saw Petitioner] fire [a] gun" even though she had testified that her eyes were closed.  (Doc. 1 at 8.)  On direct examination, D.H. testified that she saw that Petitioner "had a gun" and that she saw another "gentlemen shooting in the air." (Doc. 10, Ex. DDD at 101.)  She described where Petitioner stood, stated that he had a gun in his hand, that he pointed it at the car, and that she saw "sparks from the gun" "about four or five times."  (*Id.* at 103-04, 109-10.)  On cross-examination, D.H. testified that she "leaned back" during the shooting, but that she kept her "head up."  (*Id.* at 121.) She said she "looked out for a moment," and then "leaned back" and "closed [her] eyes."

(*Id.* at 122.)  On re-direct examination, D.H. testified that she saw Petitioner shoot at the car and that she closed her eyes "[i]n the middle of the shooting," after she saw the "muzzle flashes" from Petitioner's gun.  (*Id.* at 122-23.)

Petitioner has not shown that D.H.'s testimony was false or that the prosecutor knew it was false.  Additionally, D.H.'s testimony was consistent.  She testified that she saw Petitioner shoot a gun at the car in which she was a passenger.  On re-direct examination, D.H. clarified that she closed her eyes and leaned back *after* she saw Petitioner fire the gun.

### 4.        The Investigating Detective's Testimony

Finally, Petitioner claims that the investigating detective testified falsely by stating that Petitioner was standing upright and then moved into a crouching position when he shot at the car.  (Doc. 1 at 9.)  In response to a jury question, the detective opined that the bullet that hit L.H. above her right eye came through an open car window, which was consistent with the "description being given that . . . the suspect began firing and then continued to slide down the back or the side of the car he was leaning up against." (Doc. 10, Ex. FFF at 133-34.)   Petitioner does not cite any evidence to support his assertion that the detective's testimony was false, and the record contains testimony that support the detective's testimony.  D.H. testified that she saw Petitioner "standing" and holding a gun.  (Doc. 10, Ex. DDD at 10-03.)  Ty.R. testified that after Petitioner fired "the first shot[,] he immediately squatted down and fired towards the car."  (Doc. 10 Ex. EEE at 73.)

As set forth above, Petitioner has not shown that the prosecutor knowingly presented any false testimony.  Accordingly, his false testimony claim fails.  Petitioner also has not shown that the state court's rejection of Petitioner's due process claim based on the prosecutor's alleged presentation of false testimony at trial was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, *Napue*.  Accordingly, he is not entitled to habeas corpus relief based on this claim.  *See* 28 U.S.C. § 2254(d).

1

### D.    Ground Three (a)

2    In Ground Three (a), Petitioner asserts that the trial court improperly denied

3 defense counsel access to the medical records of M.R., Ty.R., D.H., and L.H in violation

4 of his Fifth Amendment right to a fair trial.  (Doc. 1 at 10.)  On direct appeal, the

5 appellate court considered this claim under *Brady v. Maryland*, 373 U.S. 83 (1963), and

6 rejected it.  (Doc. 10, Ex. Y; Doc. 10-1 at 173, 175-76; Doc. 10, Ex. AAA at 7.)

7 Petitioner has not shown that he is entitled to habeas corpus relief on this claim.  *See* 28

8 U.S.C. § 2254(d).

9    Before trial, defense counsel moved to compel the production of the "complete

10 and unredacted medical records" of M.R, D.H., and L.H.[16]  (Doc. 10, Ex. K.)  The State

11 opposed the motion, arguing that the records were irrelevant and protected under the

12 doctor-patient privilege.  (Doc. 10, Ex. L.)  In her reply, defense counsel argued that due

13 process required disclosure of the records, and that the records were relevant because

14 they contained "information concerning the condition of each individual upon arrival to

15 the hospital," "reflect[ed] the ability of these individuals[] to perceive, recall and/or

16 accurately relate the events that brought them to the hospital[] that morning," and were

17 needed to "effectively cross examine, and/or impeach these witnesses at trial."  (Doc. 10,

18 Ex. M; Doc. 10-1 at 93.)

19    The trial court concluded that Petitioner had "demonstrated [the] possible

20 relevance of the documents sought" and ordered that the complete medical records of

21 L.H., D.H., and M.R. be sealed and provided to the court for an *in camera* review.

22 (Doc. 10, Ex. N.)  After the *in camera* review, the trial court found the records contained

23 "nothing exculpatory" and did not "contain any statements relating to identification or

24

25    [16]  Petitioner's motion to compel the production of medical records at trial did not
26 request medical records for Ty.R.  (Doc. 10, Ex. K.)  The record reflects that Ty.R. was
not shot, and there is no indication that there are any medical records for Ty.R. related to
27 the shooting.  Accordingly, Petitioner's claim that the trial court denied the production of
medical records for Ty.R lacks merit.
28

- 42 -

1    statements of witnesses." (Doc. 10, Ex. O.) The trial court ordered that "none of the

2    medical records [were] to be disclosed," and sealed the records. (*Id.*)

3        On direct appeal, Petitioner argued the trial court's order sealing the medical

4    records violated his constitutional rights and *Brady v. Maryland*, 373 U.S. 83 (1963).

5    (Doc. 10, Ex. Y; Doc. 10-1 at 173, 175-76.) The court of appeals ordered the medical

6    records unsealed for its review, and then resealed the records. (Doc. 10, Ex. Z.) The

7    court of appeals rejected Petitioner's claim, stating, "[w]e have reviewed these records on

8    appeal and agree with the trial court's conclusion that they contain nothing exculpatory.

9    Additionally, we find no support for [Petitioner's] assertion that the assistant county

10   attorney assigned to the case 'took out the stuff about [the] victims/witnesses that was

11   favorable to the defense.'" (Doc. 10, Ex. AA at 7.) Petitioner has not shown that the

12   appellate court's rejection of Petitioner's *Brady* claim was based on an unreasonable

13   determination of the facts, or that it was contrary to, or an unreasonable application of,

14   Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

15       A criminal defendant is entitled to discover evidence that is both "favorable to the

16   accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57

17   (1987); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "the suppression by

18   the prosecution of evidence favorable to an accused upon request violates due process

19   where the evidence is material either to guilt or to punishment"). "Evidence is material

20   only if there is a reasonable probability that, had the evidence been disclosed to the

21   defense, the result of the proceeding would have been different. A 'reasonable

22   probability' is a probability sufficient to undermine confidence in the outcome." *Ritchie*,

23   480 U.S. at 57 (internal quotation and alteration omitted).

24       In *Ritchie*, the Court approved the trial court's *in camera* review of disputed

25   documents, explaining that this procedure serves a petitioner's interest in determining

26   whether the documents contain favorable or material information, while protecting

27   confidentiality interests. 480 U.S. at 61. Here, both the trial court and the court of

28   appeals reviewed the sealed medical records and found they did not contain exculpatory

evidence.   This factual finding by the state courts is "presumed to be correct" and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner asserts that the medical records contained "key evidence" (Doc. 1 at 10), but he does not describe the exculpatory or "key" information they might have contained, or provide any "clear and convincing" evidence to rebut the state courts' factual findings based on the courts' *in camera* review of the medical records.  *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (stating under habeas review, a federal court presumes "state courts know and follow the law") (per curiam).  Petitioner's unsupported speculation that the medical records contained evidence that was both favorable to Petitioner and material to his defense does not establish a *Brady* violation.  *See Runningeagle v. Ryan*, 686 F.3d 758, 769-70 (9th Cir. 2012) ("[T]o state a *Brady* claim, [a petitioner] is required to do more than 'merely speculate' about what [a potential witness] told prosecutors."); *United States v. Croft*, 124 F.3d 1109, 1124 (9th Cir. 1997) ("'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.'") (quoting *United States v. Agurs*, 427 U.S. 97, 109-10 (1976)).

Petitioner has not shown that there is a reasonable probability that, if the medical records been disclosed to defense counsel, the result of his trial would have been different.  *See Ritchie*, 480 U.S. at 57.  At trial, Petitioner requested M.R.'s, D.H.'s, and L.H.'s medical records to determine whether those records contained information that defense counsel could use to cross-examine or impeach the victims.[17]  Even without the medical records, defense counsel thoroughly cross-examined D.H. and M.R. at trial.  He pointed out inconsistent statements they made to police and challenged their perception

---

[17]   At trial, defense counsel advised the trial court that L.H.'s autopsy report indicated that she had drugs and alcohol in her system when she died.  (Doc. 10, Ex. DDD at 129-30.)  Defense counsel tried to introduce that evidence, but the trial court precluded it as irrelevant.  (Doc. 10, Ex. DDD at 130-34.)  Therefore, it appears that evidence that drugs and alcohol were present in L.H.'s system was disclosed to Petitioner.

of the shooting based, in part, on the possibility that they had consumed alcohol that evening.[18]   (Doc. 10, Ex. DDD at 110-22; Ex. EEE at 27-45.)   Petitioner has not established that there is a reasonable probability that disclosure of the medical records would have changed the outcome of his trial.  *See Mainiero v. Jordan*, 105 F.3d 361, 364 (7th Cir. 1997) (finding a state court's decision to deny disclosure of the victim's psychiatric records after reviewing the records in camera was a reasonable application of *Ritchie* when the petitioner did not establish the records would have affected the outcome of his trial.

Therefore, Petitioner has not shown the state court's rejection of his claim in Ground Three (a) was based on an unreasonable determination of the facts, or that it was contrary to, or based on an unreasonable application of, controlling Supreme Court precedent.  *See* 28 U.S.C. 2254(d).  Accordingly, he is not entitled to relief on Ground Three (a).

### E.    Ground Six

Finally, Petitioner claims that the trial court imposed "unconstitutional multiple sentences for committing a single act," in violation of the Eighth Amendment.  (Doc. 1 at 17.)  He argues that consecutive sentences were improper because all of the acts upon which his convictions are based arose from a single act of shooting.  (*Id.*)  On direct appeal, Petitioner argued that the trial court erred by imposing consecutive sentences. (Doc. 10, Ex. Y; Doc. 10-1 at 176.)  The appellate court rejected the claim stating that Petitioner did not cite any legal authority to support his claim, and the court "[found] none." (Doc. 10, Ex. AA at 10-11.)  The court explained that "[e]ach offense constituted a single act, and we discern no issue of double punishment presented here.  Imposition of consecutive sentences was therefore within the trial court's discretion." (*Id.*)  Petitioner

---

[18]   In response to defense counsel's question, D.H. testified that she did not drink on the night of the shooting.  (Doc. 10, Ex. DDD at 112.)  M.R. testified on cross-examination that she did not drink on the night at issue because she did not have any money.  (Doc. 10, Ex. EEE at 29.)  She also testified that the other women "probably had one drink."  (*Id.*)  She then testified that she "probably said no," if anyone had offered to buy her a drink because "sometimes [she] drinks, and sometimes [she doesn't]."  (*Id.* at 30.)

1    has not shown that he is entitled to habeas corpus relief on this claim.  *See* 28

2    U.S.C. § 2254(d).

3        Although Petitioner cites the Eighth Amendment to support his sentencing claim

4    in Ground Six, he appears to be making a Fifth Amendment claim — that his consecutive

5    sentences constitute double punishment in violation of the Double Jeopardy Clause.[19]

6    The Double Jeopardy Clause, among other protections, "protects against multiple

7    punishments for the same offense."  *See Ohio v. Johnson*, 467 U.S. 493, 498-99 (1984)

8    (citation omitted).  To determine whether a double jeopardy violation has occurred, the

9    court applies the same-elements test, also known as the *Blockburger*[20] test, which

10   "inquires whether each offense contains an element not contained in the other; if not, they

11   are the 'same offence' and double jeopardy bars additional punishment and successive

12   prosecution."  *United States v. Dixon*, 509 U.S. 688, 696 (1993).  However, even if

13   multiple offenses constitute the "same offense" under this test, the imposition of

14   cumulative punishments does not violate the Double Jeopardy Clause if the state

15   legislature has authorized cumulative punishment.  *See Missouri v. Hunter*, 459 U.S. 359,

16   366, 368-69 (1983) ("With respect to cumulative sentences imposed in a single trial, the

17   Double Jeopardy Clause does no more than prevent the sentencing court from prescribing

18   greater punishment than the legislature intended.").

19       The trial court imposed consecutive sentences on Counts One through Five for

20   Petitioner's convictions for the first-degree murder of L.H. (Count One), and the

21   aggravated assaults of D.H., M.R., Ta.R., and Ty.R. (Counts Two through Five).

22   (Doc. 10, Ex. D, Ex. R at 4-5; Ex. JJJ at 40.)  Under the same-elements test, first-degree

---

23

24       [19]  As Respondents argue (Doc. 10 at 58 n.35), to the extent that Petitioner raises
an Eighth Amendment claim, it is technically exhausted and procedurally defaulted.

25   Petitioner did not present an Eighth Amendment sentencing claim to the state courts.
Thus, such a claim has not been properly exhausted.  *See Boerckel*, 526 U.S. at 842;

26   *Cooper*, 641 F.3d at 326-27.  Petitioner cannot return to state court to properly exhaust
this claim because of the preclusion and time bars.  *See* Ariz. R. Crim. P. 32.1, 32.2(a) &

27   (b), 32.4(a).  Accordingly, to the extent Petitioner makes a cruel and unusual punishment
claim under the Eighth Amendment, that claim is technically exhausted, but procedurally

28   defaulted, and not subject to federal habeas corpus review.

     [20]  *Blockburger v. United States*, 284 U.S. 299 (1932).

1    murder required proof of an element — that the victim died — that aggravated assault did

2    not.   *Compare* Ariz. Rev. Stat. § 13-1105(A)(1) (defining first-degree premeditated

3    murder), *with* Ariz. Rev. Stat. §§ 13-1203(A)-1204(A) (defining aggravated assault).

4         Additionally, two of the aggravated assault counts were charged under Ariz. Rev.

5    Stat. § 13-1203(A)(1), and the other two were charged under Ariz. Rev. Stat. § 13-

6    1203(A)(2).   (Doc. 10, Ex. D.)   These two types of assault required proof of different

7    elements.   Assault under § 13-1203(A)(1) required proof that the defendant

8    "intentionally, knowingly, or recklessly caus[ed] any physical injury."   Assault under

9    § 13-1203(A)(2) required proof that the defendant "intentionally plac[ed] another person

10   in reasonable apprehension of physical injury."   Thus, these two types of assault are not

11   the "same offense" under the *Blockburger* test because each assault required proof of an

12   element that the other did not.   *See Blockburger*, 284 U.S. at 304.

13        Finally, when determining whether multiple convictions arising from the same

14   statutory section violate the Double Jeopardy Clause, a court determines whether the

15   legislature intended to permit multiple convictions and punishments based on the

16   violation of a single statute.   *See Ladner v. United States*, 358 U.S. 169, 173-79 (1958).

17   "The test is whether the individual acts are prohibited, or the course of action which they

18   constitute.  If the former, then each act is punishable separately.  If the latter, there can be

19   but one penalty."  *Blockburger*, 284 U.S. at 302 (internal quotation omitted).

20        Arizona courts have interpreted Ariz. Rev. Stat. § 13-1203 as focusing on the

21   "result of the act." *See State v. Gunter*, 643 P.2d 1034, 1038-40 (Ariz. Ct. App. 1982)

22   (finding that a single act of throwing acid supported two assault charges when two

23   victims were injured).  In other words, each individual act of assault is defined by the

24   result of the act and not by the defendant's intent.  *Id.*  Because each assault in this case

25   was committed against a separate victim, each constituted a separate offense.  *See*

26   *Blockburger*, 284 U.S. at 302; *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)

27   (stating that, except in "extreme circumstances," a federal court is bound by state court's

28

1   construction of state law); *Gentry v. MacDougall*, 685 F.2d 322, 323 (9th Cir. 1982)

2   (same).  Accordingly, each act of assault was properly punished separately.

3       Further, Arizona courts have construed Arizona's "double punishment" statute,

4   Ariz. Rev. Stat. § 13-116, as authorizing consecutive sentences when "a single act harms

5   multiple victims."  *See State v. Gordon*, 778 P.2d 1204, 1208 n.4 (Ariz. 1989) (noting

6   that Arizona "courts have held that a single act that harms multiple victims may be

7   punished by consecutive sentences"); *State v. Henley*, 687 P.2d 1220, 1222-23 (Ariz.

8   1984) (finding that consecutive sentences were permissible when a single bullet hit two

9   people), *abrogated on other grounds by State v. Soliz*, 219 P.3d 1045 (2009).  Because

10  the Arizona legislature has authorized the imposition of consecutive sentences under the

11  circumstances present in Petitioner's criminal case, the imposition of consecutive

12  sentences did not violate the Double Jeopardy Clause.  *See Hunter*, 459 U.S. at 366-69;

13  *see also Gentry*, 685 F.2d at 323 (holding that Arizona law authorized consecutive

14  sentences for two counts of manslaughter arising from the same act of driving while

15  intoxicated, and rejecting the petitioner's claim that the sentences violated the Double

16  Jeopardy Clause).

17      Petitioner has not shown that the appellate court's rejection of his claim that the

18  trial court erroneously imposed consecutive sentences for convictions arising from a

19  single act of shooting was based on an unreasonable determination of the facts, or that it

20  was contrary to, or an unreasonable application of, clearly established federal law as

21  determined by the Unites States Supreme Court.  *See* 28 U.S.C. § 2254(d).  Thus,

22  Petitioner is not entitled to habeas relief on Ground Six.[21]

23

24      [21]   As Respondents note (Doc. 10 at 61 n.37), Petitioner also appears to argue that

25  the trial court did not consider mitigating evidence at sentencing, and that it improperly
    considered aggravating circumstances.  (Doc. 1 at 17.)  The record does not support

26  Petitioner's claim because the trial court discussed the mitigating evidence that Petitioner
    presented and stated that it had "considered all of those factors, all of those

27  circumstances," when it sentenced Petitioner.  (Doc. 10, Ex. JJJ at 39.)  Additionally, the
    trial court did not impose aggravated sentences; rather, it imposed the presumptive

28  sentence for each count of conviction.  (Doc. 10, Ex. R at 4-5, Ex. JJJ, at 39-40.)
    Accordingly, these claims lack merit.

## V.      Conclusion

The Court recommends that the Petition for Writ of Habeas Corpus be denied.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of Grounds One (f) and (g), Grounds Three (b)-(e), Ground Four, and Ground Five is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right in his remaining claims for relief.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    Failure to file timely objections to any factual determination of the Magistrate

2    Judge may be considered a waiver of a party's right to appellate review of the findings of

3    fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

4    *See* Fed. R. Civ. P. 72.

5    Dated this 18th day of September, 2014.

Bridget S. Bade
United States Magistrate Judge